IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

WALTER S. WILSON, SR.,      *
                                 *
    Plaintiff,            *
                                 *
vs.                       *   CIVIL ACTION 05-00566-BH-B
                               *
MICHAEL J. ASTRUE,[1]      *
Commissioner of          *
Social Security,        *
                               *
    Defendant.           *

## REPORT AND RECOMMENDATION

Plaintiff Walter S. Wilson, Sr. ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 et seq., and 1381 et seq. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **RECOMMENDED** that the decision of the Commissioner is due to be **REVERSED** and **REMANDED.**

## I.  Procedural History

Plaintiff protectively filed applications for disability insurance benefits and supplemental security income in August and

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, he has been substituted as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

September 2003, respectively, alleging that he has been disabled since December 20, 2001. (Tr. 17, 43-46, 80, 173-177). In his applications, Plaintiff cited severe leg, hip and back pain, but primarily his back impairment (lumbar disc herniation with right sciatic radiculitis, status post lumbar hemilaminotomy and foraminotomy). (Id.) Plaintiff's applications were denied initially and upon reconsideration. (Id. at 25-30A, 178-183). He filed a timely Request for Hearing before an Administrative Law Judge ("ALJ"). (Id. at 31, 184). On January 14, 2005, Administrative Law Judge Alan E. Michel ("ALJ Michel") held an administrative hearing which was attended by Plaintiff and his representative. (Id. at 199-215). On March 31, 2005, ALJ Michel entered an unfavorable decision finding that Plaintiff is not disabled. (Id. at 13-22). Plaintiff's request for review was denied by the Appeals Council ("AC") on September 21, 2005. (Tr. 4-8, 11, 184). In its decision, the AC noted that while it had considered the additional evidence Plaintiff submitted,[2] the evidence did not provide a basis for changing the ALJ's decision. (Id. at 4-8). Thus, the ALJ's decision became the final decision of the Commissioner in accordance with 20 C.F.R. § 404.981. (Id.) The parties agree that this case is now ripe[3] for judicial review

_____

[2]On February 7, 2005, Plaintiff's counsel submitted additional medical records, including Dr. Smith's January 2005 PCE. (Tr. 148-149).

[3]The parties waived oral argument in this case. (Doc. 19).

and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

**II.   Issues on Appeal**

A.   Whether the case should be reversed and remanded so that the ALJ may consider the new and material evidence which was submitted at the Appeals Council level?

B.   Whether the ALJ erred by failing to assign controlling weight to Dr. Smith's PCE findings?

C.   Whether the ALJ erred in determining Plaintiff's residual functional capacity?

**III. Factual Background**

Plaintiff was born on November 25, 1996, and was 38 years old at the time of the administrative hearing. (Tr. 17, 44, 204). Plaintiff has a 12th grade education, and while in the Air Force, received vocational training in plumbing (master plumber's license), welding and administrative supervision. (Id. at 65-66, 86, 204). Plaintiff has past work experience as a laborer, welder, plumber (most of his life), gas pump attendant, mechanic, warehouser, cashier, horse farm manager and deli worker. (Id. at 17, 62-63, 71-78, 81, 97-105, 115, 205).

At the January 14, 2005 administrative hearing, Plaintiff testified that he worked as a plumber almost all of his life, and last worked in December 2001, when his employer closed due to bankruptcy. (Id. at 205). Following the closing, Plaintiff sought other employment and received 36 weeks of unemployment compensation. (Id. at 205-206, 214). Plaintiff testified that he

suffers from severe lower back, right hip and right leg pain, which stems from work-related injuries he sustained in November 1999. (Id. at 205-211).  Plaintiff testified that he also has arthritis in his right hand, which affects his squeezing and gripping, and that he suffers from depression and panic attacks. (Id. at 207-209).  According to Plaintiff, his main problem is his right hip and sciatic pain down his right leg which has made him lose strength in his right leg. (Tr. 209-210).  Plaintiff's medications have included Propyxphene, Prednisone, Clonazepam, Lexapro and Tylenol.  (Id. at 113).

With respect to his daily activities, Plaintiff testified that he prepares his five-year old daughter for school in the mornings and cares for his two-year old child during the day.  (Id. at 212). Plaintiff also reported that he takes walks around the block per his physician's instructions.[4]  (Id.)

---

[4]In a September 15, 2003 Physical Activities Questionnaire, Plaintiff reported that his daily activities include performing household chores and taking care of his two young children; however, he added that it is hard to bend over and pick up the children or their toys, he cannot pick up a full basket of clothes, and he must use "rails" to get up and down from a sitting or standing position.  (Tr. 91-96).  Plaintiff also reported that he cannot sit or stand for more than 15 minutes or his legs fall asleep; he is in constant pain in right lower back, right hip and upper leg; he can only walk 20 minutes; he cannot lift more than 10-15 pounds due to right hip pain; and he takes Tylenol to control his pain 3-5 times per week.  (Id.)  Plaintiff reports that he cannot perform yard work, needs assistance with shopping (carrying bags) and loading or unloading groceries, cannot drive for any long distance, can only perform activities for 30 minutes before requiring a break and stops due to severe pain or numbness in his lower body.  (Id.)

IV.  **Analysis**

    A.  **Standard Of Review**

       In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied. <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990).[5]  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1235 (11th Cir. 1991); <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]").  In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.  <u>Chester v. Bowen</u>, 792 F. 2d 129, 131 (11th Cir. 1986); <u>Short v. Apfel</u>, 1999 U.S. Dist. Lexis 10163 (S.D. Ala. 1999).

---

    [5]This Court's review of the Commissioner's application of legal principles is plenary.  <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir. 1987).

B.   **Discussion**

An individual who applies for Social Security disability benefits must prove his disability.   20 C.F.R. §§ 404.1512, 416.912.   Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. §§ 423(d)(1)(A), 404.1505(a), 416.905(a).   The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability.   20 C.F.R. §§ 404.1520, 416.920.[6]

In case <u>sub judice</u>, the ALJ determined that Plaintiff, a younger individual with a high school education, has not engaged in

---

[6]The claimant must first prove that he or she has not engaged in substantial gainful activity.  The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work.  <u>Jones v. Bowen</u>, 810 F.2d 1001, 1005 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history.  <u>Id.</u> at 1005.  Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history.  <u>Sryock v. Heckler</u>, 764 F.2d 834 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled.  <u>Jones v. Apfel</u>, 190 F.3d 1224, 1228 (11th Cir. 1999).  <u>See also Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing <u>Francis v. Heckler</u>, 749 F.2d 1562, 1564 (11th Cir. 1985)).

substantial gainful activity since his alleged onset date. (Tr. 16-22, Findings 2, 8-9). The ALJ concluded that while Plaintiff has the severe impairments of a history of lumbar disc herniation with right sciatic radiculitis, status post lumbar hemilaminotomy and foraminotomy, they do not meet or medically equal the criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4. (Id., Findings 3-4). The ALJ determined that Plaintiff retains the residual functional capacity ("RFC") to perform a full range of sedentary work on a regular and sustained basis; however, he is unable to perform any of his past relevant work ("PRW"), and has no transferable skills from any PRW. (Id., Findings 6-7, 10-11). Utilizing Rule 201.28 of the Medical-Vocational Rules ("the Grids"), the ALJ concluded that while Plaintiff's PRW is precluded by his RFC, he is not disabled. (Id., Findings 12-13).

The record reflects that in September 1999, Plaintiff was admitted to D.W. McMillan Hospital ("McMillan"), for two days, with complaints of severe back and abdominal pain. (Tr. 116-140). While hospitalized, he was treated by William H. Whittle, M.D. ("Dr. Whittle"). (Id.) A physical examination of Plaintiff revealed that his chest, abdomen and lumbar spine x-rays were normal, and that his barium enema test was normal. (Id.) He was discharged with a diagnosis of probable lumbosacral pain with referred pain, and instructed not to do any heavy straining or lifting and to have a

MRI of his lumbar spine.   (Id. at 117).

Plaintiff's next medical treatment was over 4 years later and nearly 2 years after his alleged disability onset date.   On November 20, 2003, Plaintiff was examined by consultative examiner Mark B. Ellis, D.O. ("Dr. Ellis") at the request of the Agency for a disability evaluation of his right lower back and right hip pain. (Tr. 141-146).   Plaintiff's physical exam revealed that for his extremities and spine, he had no atrophy or deformities; normal range of motion; 5/5 grip strength bilaterally in each hand; 5/5 muscle strength bilaterally in his forearms, biceps, triceps and shoulders; 5/5 muscle strength in his feet, in dorsiflexion and plantar flexion, calves, quads and hamstring muscles bilaterally; negative straight leg raising bilaterally; no muscle wastage, spasms or fasciculations in his back muscles; no gross motor/sensory deficits; a normal gait; and the ability to toe walk, squat, and heel walk.  (Id. at 142-145).   Dr. Ellis found that Plaintiff had a full range of motion in his hand joints, could oppose his thumbs to all fingers, make a fist with both hands, and manipulate objects with both hands.  (Id. at 143).   Plaintiff's complaints of pain in his back and leg, with right leg and back movement, were noted. (Id. at 142).   X-rays of his lumbosacral spine (AP and lateral views) showed no fractures, dislocations, or decreased vertebral disc height; his curvature was normal; and he had no gross abnormalities.  (Id. at 143).   Dr. Ellis diagnosed Plaintiff with

back pain.  (Id.)

On February 9, 2004, Plaintiff was seen by neurosurgeon Robert W. White, M.D. ("Dr. White") of the Coastal Neurological Institute, P.C., for lower back and right leg pain.  (Tr. 159-160, 169-172). His physical exam revealed that Plaintiff stood with his right hip and knee flexed, walked with an antalgic gait on the right, had positive sciatic stretching on the right and had a reduced range of motion of the lumbar spine; specifically, his lumbar spine exam showed straightening, forward flexion limited to 30 degrees, extension to 10 degrees, positive sciatic stretching on the right, normal strength, reflexes diffusely hypoactive but symmetric, normal distal pulses in both feet and plantar responses were downgoing. (Id. at 160).  A January 25, 2004 MRI revealed that Plaintiff had a large disc herniation at the right L5-S1.  (Id.)  Dr. White diagnosed Plaintiff with lumbar disc herniation with right sciatic radiculitis and recommended a surgical consult with Dr. Faircloth. (Id. at 160).

Plaintiff was next seen by neurological surgeon William Brent Faircloth, M.D. ("Dr. Faircloth") on February 12, 2004, for acute back and right leg pain.  (Id. at 166-167).  Upon physical exam, no abnormalities were noted in Plaintiff's station or gait.  (Id.) With regard to Plaintiff's upper extremities, there was no spasticity or cogwheeling in his bilateral muscle tone, he had 5/5 bilateral muscle strength, and he had no atrophy or abnormal

movements.  (Tr. 167).  For Plaintiff's lower extremities, he had no cogwheeling or spasticity with his bilateral muscle tone, he had diffuse bilateral 5/5 muscle strength, and he had no atrophy or abnormal movements.  (Id.) Plaintiff had normal 2+ reflexes.  (Id.) His cervical spine had a full range of motion on rotation, extension and flexion, and a negative Spurling's maneuver.  (Id. at 168).  His lumber spine tested positive for straight leg raising on the right; his extension was limited, causing right leg pain, and was limited to 5-10 degrees; and his flexion was limited, causing back and right leg pain, and was limited to 30-45 degrees.  (Id.)

Plaintiff was admitted to the Mobile Infirmary by Dr. Faircloth on February 25, 2004, for right side lumbar disc herniation L5-S1 surgery (a right lumbar hemilaminotomy and foraminotomy at L5-S1) due to intractable pain.  (Id. at 150-151, 153-156, 158, 161-163, 197).  It was noted that an MRI revealed a large extruded disc at L5-S1 and that Plaintiff failed to improve with conservative management.  (Id.)  Plaintiff was discharged the day after surgery, and was advised to avoid strenuous activities, bending, twisting, stooping, or lifting more than 10 pounds.  (Tr. 150, 158).  On March 18, 2004, Dr. Faircloth conducted a post-operative exam, at which time he noted that Plaintiff exhibited no abnormalities in gait or station; had 5/5 muscle strength bilaterally in his upper and lower extremities; had no atrophy, abnormal movements, cogwheeling or spasticity, in his upper or

lower extremities; his sensation, touch and reflexes were normal 2+
bilaterally; and his extension and rotation, both in the cervical
and lumbar spine, exhibited a full range of motion, and only his
lumbar spine flexion was limited (causing back and right leg pain).
(Id. at 164).  It was noted that Plaintiff described his pain as
"moderate" in severity and that his back pain and sensory changes
were improved.   (Id.)   Plaintiff reported that he was still
experiencing intermittent radicular pain in his right leg.  (Id.)
However, Dr. Faircloth did not prescribe any treatment regime, and
he released Plaintiff to return to work with only a 30 pound weight
restriction.   (Id. at 165).   He also instructed him to
progressively increase his activities.   (Id.)   There is no
indication in the record that Plaintiff sought any further medical
treatment from Dr. Faircloth.

On January 25, 2005, Sage Smith, M.D. ("Dr. Smith") completed
a Physical Capacities Evaluation ("PCE"), concluding that Plaintiff
can sit, stand and walk for 1 hour at a time and for a total of 1
hour per day; can occasionally lift and carry up to 10 pounds; can
use both of his hands for simple grasping, but not to push or pull
or for fine manipulation; cannot use his feet to perform repetitive
movements; cannot at all bend, squat, crawl, climb or reach; has a
total restriction from activities involving unprotected heights,
being around moving machinery and exposure to dust, fumes or gases;
and has moderate restrictions from driving automotive equipment.

(Tr. 149, 157).

1.   **Whether the case should be reversed and remanded so that the ALJ may consider the new and material evidence which was submitted at the Appeals Council level?**

Plaintiff contends that this case is due to be reversed and remanded so that the ALJ may consider new and material evidence – namely, Dr. Smith's treatment records, which he submitted to the Appeals Council.  (Tr. 192-197).  Plaintiff argues the AC's decision stated only that it "considered" the additional evidence, but failed to explain why the records did not constitute "new and material evidence."  In so doing, Plaintiff cites the untimely death of her former counsel as the reason why the records were not provided in a timely manner to the ALJ.[7]

As Plaintiff is appealing the AC's decision denying review, this Court must review the record as it was before the AC, which includes the submitted records.  <u>See</u>, <u>e.g.</u>, <u>Newsome v. Barnhart</u>, 444 F. Supp. 2d 1195, 1202 (M.D. Ala. 2006); <u>Fry v. Massanari</u>, 209 F. Supp. 2d 1246, 1252 (N.D. Ala. 2001); <u>Falge v. Apfel</u>, 150 F.3d 1320, 1324 (11th Cir. 1998).  In the Eleventh Circuit, to warrant remand for consideration of new evidence, a plaintiff must

---

[7]Plaintiff states that the administrative hearing was held on January 14, 2005, and that Plaintiff's former counsel was going to produce additional documents to the ALJ after that hearing, but that due to counsel's death in February 2005, the records were not timely submitted.

establish that 1) new, non-cumulative[8] evidence exists, 2) the evidence is material (_i.e._, relevant and probative so that a reasonable possibility exists that it would change the administrative result);[9] and 3) good cause[10] exists for the failure to incorporate the evidence into the record in the ALJ's proceedings.  See, e.g., Archer v. Commissioner of Social Security, 176 Fed. Appx. 80, 82-83 (11th Cir. 2006) (per curiam); Magill v. Commissioner of Social Security, 147 Fed. Appx. 92, 95-96 (11th Cir. 2005) (per curiam); Vega v. Commissioner of Soc. Sec., 265 F.3d 1214, 1218-1219 (11th Cir. 2001); Falge, 150 F.3d at 1323-1324.

The evidence submitted to the AC consists of Dr. Smith's treatment notes from January 2004-February 2005.  (Tr. 192-197). The records reveal that Plaintiff sought treatment from Dr. Smith on three occasions in January 2004, prior to his back surgery. (Id. at 194-195, 197).  On those occasions, Plaintiff reported severe back pain, and an MRI revealed a large acute disc herniation; Dr. Smith provided Plaintiff with samples of Celebrex, Ultram and Lexapro.  (Id.)  Plaintiff did not see Dr. Smith again

---

[8]The non-cumulative requirement is satisfied by the production of new evidence not contained in the administrative record. Cannon v. Bowen, 858 F.2d 1541, 1546 (11th Cir. 1988). Such evidence must relate to the time period on or before the date of the ALJ's decision. 20 C.F.R. § 404.970(b).  See also Falge, 150 F.3d at 1324.

[9]The materiality requirement is satisfied if a reasonable possibility exists that new evidence would change the administrative result.  Falge, 150 F.3d at 1323.

[10]The good cause requirement is satisfied when the evidence did not exist at the time of the administrative proceedings.  Cannon, 858 F.2d at 1546.  Sullivan v. Apfel, 2000 WL 1568330, *8 (S.D. Ala. Oct. 2, 2000).

until nearly a year later, in December 2004, at which time Plaintiff complained of back pain radiating to his right hip and right leg, chest pains off and on, and a short and snappy fuse. (Id. at 193). Dr. Smith assessed Plaintiff with left CP with angina and anxiety, and gave him a medication plan including Lipids, Lexapro 10 and Klonapinem and "Cardiololyte GX5." (Id.) She also advised him to stop smoking. (Id.) Plaintiff was seen by Dr. Smith again in January 2005, at which time he complained that he had hurt his right knee during a fall at home. (Tr. 192). Plaintiff reported that the knee hurt for days, but was "better now." (Id.) Dr. Smith observed that Plaintiff had right joint pain with a limited range of motion, but that his knee was not swollen and he had no effusion. (Id.) Dr. Smith's impression was that Plaintiff had suffered a right knee sprain.[11] (Id.)

First, the undersigned must determine whether remand is appropriate for consideration of new evidence. At the outset, Dr. Smith's treatment records were completed before the ALJ rendered his decision in March 2005, and as such, the evidence relates to the period at issue. 20 C.F.R. § 404.970(b); 20 C.F.R. § 416.1470(b). However, because the records were not created after the administrative hearing or ALJ's decision, the records are not

---

[11]A few additional records are contained in the records submission, however, they are irrelevant to Plaintiff's claims as they include such information as a "no show" to appointment, a lipid profile being ordered, etc.

"new."[12]   More importantly, the records are neither material nor probative because it is unlikely that they would change the administrative result.[13]   Plaintiff cites to positive straight leg raise tests, an MRI documented herniated disc, and muscle spasms in the records.   However, a review of Dr. Smith's records reveals that the muscle spasm notation was actually related to Plaintiff's report that his muscle spasms were improved – "better with steroids."   (Tr. 194).   Moreover, while an MRI documented a herniated disc on January 2004, it is undisputed that Plaintiff underwent corrective back surgery for this very problem in February 2004, and that on March 18, 2004, his surgeon, Dr. Faircloth, conducted a post-operative exam at which time he noted no abnormalities in his gait, station, or muscle tone; no atrophy/abnormal movements in his upper/lower extremities; 5/5 bilateral muscle strength in his upper/lower extremities; normal bilateral sensation, touch and reflexes; a full range of motion in extension/rotation in his cervical/lumbar spine; and only some limited flexion in the lumbar spine.   See supra.   Dr. Faircloth did not prescribe any treatment regime and he released Plaintiff to return to work with only a 30 pound weight restriction and

---

[12]See, e.g., Butler v. Barnhart, 347 F. Supp. 2d 1116 (M.D. Ala. 2003) (finding that a report which dated prior to the ALJ's decision was not new); Sherrod v. Chater, 74 F.3d 243, 246 (11th Cir. 1996) (holding that evidence available at the time the matter was before the Commissioner is not new evidence and does not require remand).

[13]See, e.g., Archer, 176 Fed. Appx. at 82-83; Falge, 150 F.3d at 1323.

instructions for him to progressively increase his physical activities. <u>Id</u>. Additionally, while Dr. Smith's notes reflect that Plaintiff had (two) positive straight leg raising tests, the first finding was in January 16, 2004, before Plaintiff's corrective back surgery took place in February 2004. (Tr. 195). Moreover, while Dr. Smith's treatment notes reflect a second positive straight leg raising test on December 22, 2004 (<u>Id</u>. at 193), Dr. Smith did not impose any restrictions or prescribe any treatment due to same. Furthermore, in January 2005, Plaintiff's only complaint was related to right knee pain, which he attributed to a fall he suffered at home, and which he reported was "better." (<u>Id</u>. at 192). Dr. Smith's impression was that Plaintiff just had a right knee sprain, as she did not observe any effusion or note any swelling. (<u>Id</u>.)

The most that Dr. Smith's treatment records reveal then, is that Plaintiff sought treatment on an extremely irregular basis, that he was treated conservatively, and that Dr. Smith did not impose any restrictions or limitations, much less find him to be disabled. In short, there is no indication in any of Dr. Smith's treatment records that Plaintiff ever complained of back pain so severe that it would result in the type of extreme functional limitations which were set forth in Dr. Smith's January 2005 PCE, and which were rejected by the ALJ. As a result, Dr. Smith's treatment records are inconsistent with her January 2005 PCE and

16

fail to provide objective substantiation for same.  Accordingly, it is unlikely that these records would have changed the administrative outcome.  Thus, they are not material.  <u>See</u>, <u>e.g.</u>, <u>Magill</u>, 147 Fed. Appx. at 95-96.  As such, remand for consideration of new evidence is simply not warranted here.  <u>Id</u>. <u>See</u> <u>also</u> <u>Archer</u>, 176 Fed. Appx at 82-83; <u>Vega</u>, 265 F.3d at 1214, 1218-1219; <u>Falge</u>, 150 F.3d at 1323-1324.

Second, Plaintiff also contends that the ALJ discredited Dr. Smith's January 2005 PCE solely on the basis that the record contained none of her own treatment notes in support of the opined limitations.  In actuality, however, the ALJ did so not only on that basis, but also because Dr. Smith offered no explanation for the degree of restrictions reported, because her findings were inconsistent with those of Dr. Faircloth, and based upon the record as a whole (including Plaintiff's credibility, other physicians' findings, etc.).  (Tr. 19-20).  Thus, it cannot be said that the ALJ based his conclusion solely on their absence.  Moreover, the undersigned's review of the record supports the ALJ's finding, as no physicians ever found such severe restrictions as those contained in Dr. Smith's January 2005 PCE.  <u>See</u> <u>supra</u>.  Rather, the record reveals that Plaintiff relied primarily on over-the-counter medicine to treat his pain (as noted by Dr. Ellis); his physical exam, following his corrective back surgery, revealed (per Dr. Faircloth) no abnormalities, normal strength, normal gait, normal

17

station, normal muscle tone, normal sensation, normal touch, normal reflexes, a normal extension of the lumbar and cervical spine with a normal range of motion, and with his only restriction being that he could return to work but had a 30 pound weight restriction and that he should progressively increase his physical activities; and his medical treatment was sporadic and he went for long periods of time without receiving any type of treatment at all (e.g., October 1999-November 2003 and March-November 2004)).  Id.

Third, Plaintiff contends that error exists because the AC failed to explain its reasons for rejecting Dr. Smith's records, thus indicating a lack of meaningful review, as the AC only stated that it had "considered" same.  (Tr. 4-8).  The undersigned finds that there is no merit to Plaintiff's argument because the AC is not required to explain a rejection of new evidence or otherwise justify its discretionary decision to deny review.  20 C.F.R. §§ 404.970, 416.1470.  Social Security Regulations provide that when the AC denies review, as is the case here, the ALJ's determination then stands as the final decision of the Commissioner.  20 C.F.R. §§ 404.900(a), 404.955, 404.981.  In this case, the AC received Dr. Smith's treatment records, found that the evidence did not provide a basis for changing the ALJ's decision, and concluded that there was no reason to review the ALJ's decision.  (Tr. 4-5).  No further explanation on the part of the AC was required.  20 C.F.R. §§ 404.970, 416.1470.

2.   **Whether the ALJ erred by failing to assign controlling weight to Dr. Smith's PCE findings?**

Plaintiff contends that the ALJ erred under SSR 96-2p, by failing to assign controlling weight to Dr. Smith's January 25, 2005 PCE findings, in which she found that Plaintiff is unable to perform a full range of sedentary work due to severe functional limitations insofar as he can only sit, stand and walk for 1 hour at a time and 1 hour total in an 8 hour workday; can occasionally lift/carry up to 10 pounds; can use his hands for simple grasping but not pushing, pulling or fine manipulation; cannot use his feet for repetitive actions; cannot bend, squat, crawl, climb or reach; cannot work at all around unprotected heights, moving machinery and exposure to dust, fumes or gases; and is moderately restricted from driving automotive equipment.  (Tr. 149, 157).

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See, e.g., Lewis v. Callahan, 125 F.3d 1436, 1439-1441 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); Sabo v. Commissioner of Social Security, 955 F. Supp. 1456, 1462 (M.D. Fla. 1996); 20 C.F.R. § 404.1527(d).  See also Johnson v. Barnhart, 2005 WL 1414406, *2 (11th Cir. Jun. 17, 2005); Wind v. Barnhart, 2005 WL 1317040, *6 (11th Cir. Jun. 2, 2005) (citing to Crawford v. Commissioner of Social Security, 363

F.3d 1155, 1159 (11th Cir. 2004)).[14]  Such "good cause" exists where: 1) the opinion was not bolstered by the evidence; 2) the evidence supported a contrary finding; or 3) opinion was conclusory or inconsistent with the doctor's own medical records.  <u>Johnson</u>, 2005 WL 1414406, *2; <u>Wind</u>, 2005 WL 1317040, *6.  "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error[;]" likewise, he commits error if he substitutes his own uninformed medical evaluations for those of a claimant's treating physicians absent good cause.  <u>Id</u>.  And it is the ALJ's duty, as finder of fact, to choose between conflicting evidence and he may reject the opinion of any physician when the evidence supports a finding to the contrary.  <u>Id</u>. (citing to <u>Landry v. Heckler</u>, 782 F.2d 1551, 1554 (11th Cir. 1986), <u>Bloodsworth</u>, 703 F.2d at 1240).

In the case <u>sub judice</u>, in determining Plaintiff's RFC, ALJ Michel assigned great evidentiary weight to the findings and opinions of Dr. Faircloth, Plaintiff's treating neurosurgeon, and assigned no evidentiary weight to the findings and January 25, 2005 PCE of Plaintiff's treating physician Dr. Smith, as follows:

> . . . . the Administrative Law Judge has assigned great evidentiary weight to the findings and opinions of Dr.

---

[14]<u>See also</u> <u>Blake v. Massanari</u>, 2001 WL 530697, *10 n.4 (S.D. Ala. Apr. 26, 2001).  The Eleventh Circuit has repeatedly made clear that the opinion of a treating physician must be given substantial weight unless good cause is shown for its rejection.  <u>See</u>, <u>e.g.</u>, <u>Walker v. Bowen</u>, 826 F.2d 996, 1000 (11th Cir. 1987); <u>Schnorr v. Bowen</u>, 816 F.2d 578, 581 (11th Cir. 1987); <u>McSwain v. Bowen</u>, 814 F.2d 617, 619 (11th Cir. 1987); <u>Wilson v. Heckler</u>, 734 F.2d 513, 518 (11th Cir. 1984).

Brent Faircloth, the claimant's treating neurosurgeon.
Dr. Faircloth released the claimant to return to work
with a 30-pound weight restriction. The undersigned has
assigned no evidentiary weight to the findings and
opinions of Dr. Sage Smith, because she has offered no
explanation for the degree of restriction reported, and
her findings are not consistent with those of Dr.
Faircloth. Moreover, the record contains no treatment
records from Dr. Smith in support of the limitations
described in her physical capacities evaluation form . .
. .

(Tr. 19-20).

As detailed _infra_, while Dr. Smith concluded that Plaintiff

had extreme functional limitations (such as only being able to

sit/stand for 1 hour at a time and only being able to lift/carry up

to 10 pounds), her conclusions were not supported by the

substantial medical evidence of record, or even her own treatment

notes due to the following:

- Plaintiff first sought treatment for lumbosacral
  pain in September 1999, following his work-related
  injury. He was only told not to do any heavy
  straining and lifting.

- Plaintiff waited over 4 years to next seek
  treatment for his allegedly disabling back pain.
  In November 2003, he was seen by Dr. Ellis, who
  noted that despite Plaintiff's reports of burning
  pain and reports of a level "5" pain on the 1-10
  scale, he had negative straight leg raising tests,
  a normal range of motion, x-rays of his lumbar
  spine were normal and he had no difficulty sitting.
  Dr. Ellis ordered no restrictions or functional
  limitations.

- Plaintiff was seen by Dr. White in February 2004
  for pain complaints. His physical exam revealed
  that he had a limited extension, a decreased range
  of motion, and an MRI of his spine found a disc
  herniation. Dr. White noted that Plaintiff reported
  that sitting, sneezing and bending increased his

21

back and leg pain; standing, lying down, walking and sex decreased his pain; and that his pain prevented him from sitting or working. Dr. White referred him for a surgical consult.

- On February 25, 2004, after a surgical consult, Dr. Faircloth operated on Plaintiff to correct his back problem. Immediately following surgery, on February 26, 2004, Dr. Faircloth issued short-term post-op restrictions of no strenuous activities, bending, twisting, stooping, or lifting more than 10 pounds.

- On March 18, 2004, Dr. Faircloth conducted a follow-up examination, in which he found that Plaintiff's back pain was improved; he exhibited no abnormalities in gait, station, or muscle tone; he had no atrophy or abnormal movements in his upper or lower extremities; his upper and lower extremity muscle strength was 5/5 bilaterally; his sensation, touch and reflexes were normal bilaterally; his extension and rotation of the cervical and lumbar spine exhibited a full range of motion; and only his flexion in the lumbar spine was limited some. As his physical exam was essentially normal, Dr. Faircloth did not prescribe any treatment regime, released Plaintiff to return to work with only a 30 pound weight restriction, and instructed him to progressively increase his physical activities.

See supra.

Accordingly, the record reveals that while Plaintiff did have back problems and pain resulting in a decreased range of motion and some limitations in his physical abilities, he received corrective back surgery in February 2004 for same - surgery which greatly improved his back pain and which, thereafter, resulted in an improvement in his condition, an essentially normal physical exam, and no restrictions on his physical abilities other than a 30 pound weight restriction. As such, the extreme functional limitations contained in Dr. Smith's January 2005 PCE stand in isolation, and

were properly discounted by the ALJ because they were not supported
by, and were inconsistent with, the overall medical evidence of
record.  See, e.g., Edwards, 937 F.2d at 583; Schnorr, 816 F.2d at
582; Bloodsworth, 703 F.2d at 1240.

**3.   Whether the ALJ erred in determining
Plaintiff's residual functional capacity?**

Plaintiff contends that the ALJ erred in determining
Plaintiff's RFC, because he relied exclusively upon Dr. Faircloth's
30 pound weight restriction and failed to perform a function-by-
function analysis of Plaintiff's limitations under SSR 96-8p.  RFC
is a measure of what a plaintiff can do despite his credible
limitations.  20 C.F.R. §§ 404.1545, 416.945.  An RFC determination
is made by the ALJ, based on all of the relevant evidence of a
plaintiff's remaining ability to do work despite his impairments.
20 C.F.R. §§ 404.1527, 416.927; Lewis, 125 F.3d at 1440.

Based upon a review of the record, the undersigned finds that
because it is not clear what evidence the ALJ relied upon to
determine Plaintiff's RFC, this case must be remanded for further
proceedings.  First, as noted infra, the ALJ rejected the only PCE
in the record because Dr. Smith's PCE was unsupported by treatment
records, and was not consistent with other medical evidence of
record.  Second, while the ALJ indicated that he was assigning
controlling weight to Dr. Faircloth's finding that Plaintiff could
lift 30 pounds, in his RFC assessment, the ALJ opined that
Plaintiff's capacity to lift was 10 pounds, which is substantially

less than Dr. Faircloth's finding.  Additionally, the ALJ opined that Plaintiff "can no longer stand and walk for the majority of an 8 hour workday[]" (Tr. 20); however, it is not at all clear what evidence the ALJ relied upon to reach these conclusions.  The bottom line, is that while the ALJ established good cause for rejecting Dr. Smith's PCE, the record does not contain any other Physical Capacity Evaluations, and the Court is unable to discern what medical evidence the ALJ relied upon to determine Plaintiff's residual functional capacity.  Because the ALJ's assessments are not linked to substantial evidence of record, this case should be remanded.  Upon remand, the ALJ should either detail the evidence of record which supports his RFC determination, or should obtain the opinion of a medical expert regarding Plaintiff's functional capabilities.  See e.g., Coleman v. Barnhart, 264 F. Supp. 2d 1007 (S.D. Ala. 2003); Billups v. Barnhart, 322 F. Supp. 2d 1220, 1227-1229 (D. Kan. 2004).

**V.   Conclusion**

For the reasons set forth, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **RECOMMENDED** that the decision of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits and supplemental security income, is due to be **REVERSED** and **REMANDED.**

The attached sheet contains important information regarding

24

objections to this <u>Report and Recommendation</u>.

    **DONE** this **15**<sup>th</sup> day of **March, 2007.**

                                      **<u>/s/SONJA F. BIVINS</u>**
                                      **UNITED STATES MAGISTRATE JUDGE**

## MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
## AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
## <u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.   **<u>Objection</u>**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  <u>See</u> 28 U.S.C. § 636(b)(1)(c); <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides, in part, that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **<u>Opposing party's response to the objection.</u>**  Any opposing party may submit a brief opposing the objection within ten (10) days of being served with a copy of the statement of objection.  Fed. R. Civ. P. 72; SD ALA LR 72.4(b).

3.   **<u>Transcript (applicable where proceedings tape recorded)</u>**.  Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

/s/SONJA F. BIVINS
**UNITED STATES MAGISTRATE JUDGE**